UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Allen B. Gottlieb, Phyllis J. Gottlieb, individually and as guardian of Jesse H. Gottlieb,<br><br>Plaintiffs,<br><br>-against-<br><br>Alexander Eisemann,<br><br>Defendant. | 25-CV-9195 (LAP)<br><br>OPINION AND ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

In this case, the Court inches closer towards resolving a litigation saga approaching its third decade. Plaintiffs Allen Gottlieb and Phyllis Gottlieb, proceeding pro se, have now sued their former lawyer, Alexander Eisemann, for purported malpractice in proceedings before this Court that arose from the Gottliebs' decades-long effort to evade a securities fraud judgment issued in SEC v. Stewart, No. 98-CV-2636 (LAP) (the "SEC Action"). Now before the Court is Eisemann's motion for summary judgment on all of the Plaintiffs' claims. For the reasons set out below, the motion is GRANTED as to the claims of Allen Gottlieb and of Phyllis Gottlieb in her individual capacity, and the claims raised for Jesse H. Gottlieb are DISMISSED WITHOUT PREJUDICE.

## BACKGROUND

The following facts are drawn from the parties' submissions,[1] including the portions of the SEC Action record that the parties have placed before the Court. Where the parties' accounts differ, the Court construes the record in the light most favorable to Plaintiffs as the non-moving party. See Adickes v. S.H. Kress & Co, 398 U.S. 144, 157 (1970).

### A. The 2003 SEC Judgment

Allen Gottlieb ("Allen") is the judgment debtor in the SEC Action. In the SEC Action, the Court found that Allen had committed various forms of securities fraud on his investors. Accordingly, the Court ordered Allen to disgorge $2,005,443.54 in ill-gotten proceeds and to pay the SEC a civil penalty of $878,333. (Feb. 7, 2023 Opinion & Order, SEC Action Dkt. 433 (Ex. P) (the

[1] The Court has considered all submissions filed in support of or in opposition to the motion, including: Defendant's Motion for Summary Judgment, Dkt. 63 ("Mot."), and its exhibits, Dkts. 63-1 to 63-17 ("Ex. A" through "Ex. Q"); the Declaration of Alexander Eisemann, Dkt. 62 ("Eisemann Decl."); Plaintiffs' opposition, Dkt. 64 ("Pl. Opp."), and its exhibits, Dkts. 64-1 to 64-7 ("Pl. Ex."); Defendant's Reply in Support of Motion for Summary Judgment, Dkt. 67 ("Reply"); Plaintiffs' sur-reply, Dkt. 70 ("Pl. Sur-Reply"); Plaintiffs' Supplemental Memorandum of Law, Dkt. 89 ("Pl. Supp. Mem."); Plaintiffs' Memorandum of Law, Dkt. 90 ("Pl. Feb. Mem."); Plaintiffs' Limited Rule 56 Addendum, Dkt. 103 ("Pl. Addendum"); Defendant's Response, Dkt. 106 ("Def. Resp."); Plaintiffs' supplemental submission concerning the judgment lien, Dkt. 110 ("Lien Submission"); Plaintiffs' Limited Response, Dkt. 111 ("Pl. Ltd. Resp."); Supplemental Declaration of Alexander E. Eisemann, Dkt. 112 ("Eisemann Supp. Decl."); and Plaintiffs' Limited Rule 56 Addendum, Dkt. 117 ("Pl. Final Addendum").

"2023 Opinion") at 1.) Phyllis J. Gottlieb ("Phyllis") is Allen's wife and the court-appointed guardian of their adult son, Jesse H. Gottlieb ("Jesse"), who has been disabled since birth. (Compl. ¶ 1.)

Eisemann is a New York-based attorney who represented Allen from time to time in the SEC Action beginning in 2005. In addition, Eisemann represented both Plaintiffs in New York from 2015 until his withdrawal as counsel in 2024. (Id. ¶¶ 2, 42; Dkt. 28 ("Countercl.") ¶¶ 5-8; Mot. ¶¶ 20, 36; Ex. A at 58, 60.)

**B. Judgment Enforcement Proceedings**

Notwithstanding the Court's 2003 judgment, Allen steadfastly refused to pay the SEC any of the disgorgement or civil penalties that the Court ordered. As time went by, the SEC soon realized that Allen was likely concealing assets that could be used to satisfy the unpaid judgment, as evidenced by the Gottliebs' ownership of multiple homes and other indicators of hidden assets. The SEC's suspicions were confirmed in July 2015, when the Gottliebs sold a home in Aventura, Florida purportedly titled in the name of Phyllis' living trust. (2023 Opinion at 4-5.)

Seeking to collect on the unpaid judgment, the SEC restrained the Gottliebs' sale proceeds held by the title company and moved for turnover of the funds. A total of $758,177.17 in proceeds (the "Proceeds") was ultimately deposited in the Court's registry pending resolution of the dispute. (Id. at 1-2.) Plaintiffs soon

after retained Eisemann to contest turnover and seek return of the Proceeds. Plaintiffs' engagement letter with Eisemann authorized Eisemann to pay his outstanding fees out of any release of the restrained funds. (Compl. ¶¶ 42-43; Countercl. ¶ 8; Ex. G ¶ 6.)

On February 18, 2016, Eisemann filed a memorandum on Phyllis' behalf that sought return of the Proceeds. Eisemann's motion argued that Phyllis owned the funds outright or, alternatively, that they were immune from Allen's creditors (including the SEC) because the property should be treated as held by the entirety. (Ex. B at 5-6, 12-19.) Eisemann also invoked Florida's so-called homestead exemption, although Eisemann did not press it as a ground for immediate release given the anticipated dispute as to whether Plaintiffs were in fact Florida residents. (Id. at 5-6, 19-21.) However, Eisemann again raised the homestead exemption in opposing the SEC's later argument that a court enforcing an SEC disgorgement judgment may, at least in some cases, disregard state-law exemptions. (Ex. D at 1-18; Ex. O at 28-30.)

In September 2016, the Court precluded Phyllis from asserting any claim to the Proceeds as a sanction for her willful failure to appear for a court-ordered deposition. However, the Court permitted Eisemann to intervene to assert a charging lien for any unpaid fees incurred through the representation. (Ex. E at 3-5; Ex. F at 8.) On January 31, 2017, the SEC and Eisemann each stipulated that Eisemann held a valid charging lien (superior to

the SEC's claim in Proceeds) for $56,428.68 in fees earned representing Phyllis. Accordingly, the SEC agreed that the title company at issue could release that amount to Eisemann in full satisfaction of his charging lien (the "Stipulation"). (Ex. G ¶¶ 1-3, 11-12.) As a condition of the stipulation, Eisemann agreed to apply the funds to his fees and not to "remit any portion of the funds received to Allen B. Gottlieb and/or Phyllis J. Gottlieb." (Id. ¶ 13.)

Before the Stipulation was submitted, Eisemann sent Allen the proposed language of his cover letter, which stated that Plaintiffs had no objection to his being paid from the restrained funds and reserved all of their rights. (Ex. I at 2.) Allen enthusiastically endorsed the proposal. (Id. ("PERFECT! DO IT.") Accordingly, the Court so-ordered the Stipulation on February 8, 2017. (Ex. J at 2; Ex. G at 4-5.)

Following these developments, the Court ultimately permitted Phyllis to renew her claim to the Proceeds as trustee of her living trust. The Court also denied that renewed motion on February 7, 2023 and awarded half of the Proceeds to the SEC. (2023 Opinion at 7, 28.) In the 2023 Opinion, the Court held that the Proceeds were derived from assets Allen had transferred to Phyllis for nominal consideration and, independently, that Allen was their equitable owner notwithstanding Phyllis' record title. (Id. at 13-22.) The Court also held that the Court's equitable authority

to enforce a disgorgement judgment may reach assets that state law would otherwise protect. Accordingly, the Court rejected any so-called homestead arguments. (Id. at 24, 27.) As to whether Phyllis was entitled to the remainder of the Proceeds, the Court held that any such value could only come from Phyllis' direct contributions. The Court held further proceedings and a hearing to determine the value of those contributions, if any. (Id. at 22-23.)

The relationship between Eisemann and Plaintiffs subsequently deteriorated. Plaintiffs blamed Eisemann for their failure to prevail before this Court and sued Eisemann in Florida State court. Presumably in view of that lawsuit, Eisemann moved to withdraw as Plaintiffs' counsel in November 2023, and the Court granted the motion in February 2024 (after Plaintiffs had commenced their malpractice action). (Ex. A at 57, 59.)

At a February 2025 evidentiary hearing concerning Phyllis' claim to the remaining Proceeds, Eisemann participated as a claimant and asserted a charging lien for further unpaid fees to the extent that Phyllis held any share of the Proceeds. (Id. at 64-68; Dkt. 83 at 1.) The Court ultimately held that Phyllis was not entitled to any share of the remaining Proceeds and denied all remaining motions filed by the Gottliebs. (See Dkt. 83 at 1; Dkt. 86 at 1.) Accordingly, the post-judgment proceedings have ended.

**C. Procedural History**

Plaintiffs commenced this action in Florida state court on December 29, 2023. Plaintiffs' operative complaint asserts claims for legal malpractice, breach of fiduciary duty, fraud, unjust enrichment, misappropriation of funds, extortion, obstruction of justice, and breach of contract, and seeks $11.5 million in damages. (Compl. at 1, 61.) Eisemann removed the action to the Middle District of Florida on diversity grounds and also asserted counterclaims for unpaid legal fees. (Dkt. 1; Countercl. ¶¶ 4, 12.) Under the scheduling order entered by the Middle District, discovery closed on August 1, 2025. (Dkt. 44 at 1; Dkt. 72 at 5.)

Following the close of discovery, Eisemann moved for summary judgment in September 2025. Before the Middle District ruled on Eisemann's summary judgment motion, however, the case was transferred to this District under 28 U.S.C. § 1404(a) on November 3, 2025. (See Mot.; Pl. Sur-Reply; Dkt. 72 at 11.) The Court thereafter denied Plaintiffs' request to reopen discovery. However, as a courtesy to Plaintiffs, the Court permitted both sides to supplement their existing summary judgment submissions. (Dkt. 94 at 1–4; Dkt. 116 at 1–2.)

**LEGAL STANDARD**

**A. Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it "might affect the outcome of the suit under the governing law," and a dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where, as here, a nonmovant bears the burden of proof at trial, the movant may carry its initial burden by pointing to the absence of evidence supporting an essential element of the nonmovant's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 325 (1986). The burden then shifts to the nonmovant, who must "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotation marks omitted). In doing so, the nonmovant "may not rely on conclusory allegations or unsubstantiated speculation."[2] Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). A declaration

[2] Because Eisemann first filed this motion in the Middle District of Florida, Eisemann does not appear to have served on Plaintiffs the notice that Local Civil Rule 56.2 requires. However, Plaintiffs told the Court that they "now understand that at the Rule 56 stage the Court looks to specific record materials cited with particularity, and that allegations in the pleadings are not treated as evidence," (Dkt. 92-2 at 2), and the Court has given Plaintiffs every opportunity to supplement their submissions. Where the record shows that a pro se litigant understood the nature and consequences of summary judgment, the absence of notice under Local Rule 56.2 does not preclude the Court from considering the motion. See Vital v. Interfaith Med. Ctr., 168 F.3d 615, 620–21 (2d Cir. 1999).

offered in opposition "must be made on personal knowledge" and "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4).[3]

**B. Legal Malpractice**

The parties' submissions appear to assume that New York law governs Plaintiffs' claims, which the Court applies to Plaintiff's malpractice claims. Under New York law, a plaintiff asserting legal malpractice must prove that the attorney "'failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession' and that the attorney's breach of this duty proximately caused plaintiff to sustain actual and ascertainable damages." Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer, 8 N.Y.3d 438, 442 (2007) (quoting McCoy v. Feinman, 99 N.Y.2d 295, 301-02 (2002)). "To establish causation, a plaintiff must show that he or she would have prevailed in the underlying action or would not have incurred any damages, but for the lawyer's negligence." Rudolf, 8 N.Y.3d at 442.

Additionally, in order to prevail on a summary judgement motion, a moving defendant must show that the lawyer "provided the advice, and conducted the diligence expected of counsel exercising

[3] Mindful of Plaintiffs' pro se status, the Court has construed their submissions liberally and has considered all of them, including the sur-reply filed without leave. The Court treats Plaintiffs' opposition and sur-reply, which Allen verified, as declarations to the extent they rest on personal knowledge. (Pl. Opp. ¶ 1; Pl. Sur-Reply at 10.)

the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession;" if the moving party falls short of this standard "it must demonstrate that its conduct [is] not the proximate cause of [Plaintiff's] damages." See Nomura Asset Cap. Corp. v. Cadwalader, Wickersham & Taft LLP, 26 N.Y.3d 40, 50 (2015).

A claim for breach of fiduciary duty that is "premised on the same facts and seeking the identical relief" as a malpractice claim "is redundant and should be dismissed", although a fiduciary claim that seeks restitution is subject to a less demanding causation standard. Nordwind v. Rowland, 584 F.3d 420, 432-33 (2d Cir. 2009) (internal quotation marks omitted).

In sum, however Plaintiffs' claims are styled, they must identify sufficient evidence at the summary judgment stage from which a reasonable jury could find that they would have prevailed in the litigations at issue but for Eisemann's conduct.

**DISCUSSION**

Although the Complaint asserts eight claims, they boil down to theories of injury. First, Plaintiff argue that Eisemann's handling of the homestead exemption and other defenses cost Plaintiffs the Proceeds. Second, Plaintiffs claim that Eisemann wrongfully took $56,428.68 of the Proceeds for himself. (Compl. ¶¶ 143-49.)

In his motion, Eisemann has pointed to the absence of evidence supporting either theory, meaning that it falls on Plaintiffs to identify record facts that create a genuine dispute of material fact. Plaintiffs have failed to do so.

**A. Plaintiffs Cannot Show That Eisemann Caused the Loss of the Proceeds**

Plaintiffs' central theory of malpractice is that Eisemann sacrificed the homestead exemption, and with it the Proceeds, by arguing tenancy by the entirety instead. Id. at ¶ 143. To survive summary judgment on that theory, Plaintiffs must point to evidence from which a jury could find that, but for that choice, they would have kept the Proceeds. See Rudolf, 8 N.Y.3d at 442; see also Nomura Asset Cap. Corp., 26 N.Y.3d at 50.

No such evidence exists in this record. Indeed, it would appear that no such evidence could exist because the very issues that Plaintiffs identify were presented to the Court and rejected. In the 2023 Opinion, for instance, the Court held that its equitable authority to enforce the judgment against Allen "may reach assets otherwise protected by state law," and for that reason it declined to consider the exemption at all. (2023 Opinion at 24, 27.) In other words, the Court rejected the entire premise that state-law exemptions limit the enforcement of a disgorgement judgment. (Ex. D at 1-18.) And Plaintiffs' related argument, that Eisemann failed to use the deeds and the Milestone affidavit

establishing Phyllis' sole title, also fails in light of the Court's holding that Allen was the equitable owner of the Proceeds whatever their record title. (2023 Opinion at 12, 18-22.)

Plaintiffs also argue that: (i) CPLR 5222(b) could not reach property or persons in Florida; (ii) Phyllis' 2015 Florida action should not have been transferred to this District under 28 U.S.C. § 1404(a); (iii) the limitations period of 28 U.S.C. § 2462 had run, and; (iv) the judgment lien expired under 28 U.S.C. § 3201 in January 2023. The first two arguments were themselves raised in the SEC Action and rejected by this Court. And the § 2462 theory—that the SEC's claims against Allen were time-barred before the SEC Action began—attacks a judgment the Court of Appeals affirmed two decades ago. As to the judgment lien, whether the lien lapsed under § 3201 is beside the point, because the SEC never relied on one. Rather, the SEC restrained the Proceeds by notice and sought them by turnover, and the funds were in the Court's registry years before the lien supposedly expired. Once again, Plaintiffs point to no omitted defense that could have changed the outcome.

Finally, Plaintiffs identify no evidence that Eisemann's withdrawal affected the outcome of these proceedings. Eisemann withdrew nearly a year before the February 2025 hearing, after Plaintiffs had sued him. The 2023 Opinion had already foreclosed

the homestead exemption and arguments based on Phyllis' ownership status. (2023 Opinion at 22-24, 27.)

On this record, no reasonable jury could find that Plaintiffs "would have prevailed in the underlying action" had Eisemann conducted the representation differently. Rudolf, 8 N.Y.3d at 442. Plaintiffs' attempts to recover the Proceeds failed not because of their counsel's performance, but because Plaintiffs' arguments were entirely without merit. Because Plaintiffs cannot prove causation, all of their claims arising from Eisemann's alleged failure to recover the Proceeds, including any claims sounding in malpractice, breach of fiduciary duty, or negligence, must fail on the merits.

**B. Any Claims Regarding The $56,428.68 Payment Must Fail**

Plaintiffs also fail to carry their burden on any claims arising from the $56,428.68 payment as well. The gravamen of Plaintiffs' theory is that Eisemann, the SEC, and the Court fashioned a "corrupt agreement" that Eisemann would be paid from the Proceeds in exchange for abandoning the homestead exemption and agreeing "not to help any member of the Gottlieb family," and that Eisemann took the fee over Phyllis' objection. (Compl. ¶¶ 45-46, 117, 141(v), (vii).)

It is admittedly difficult to construe the claims that Plaintiffs assert as to this particular conduct. But whether classified as claims sounding in fraud, conspiracy, or

malpractice, the claims are meritless as a matter of law. First, Plaintiffs consented to the payment at issue. (Ex. G at 5.) The engagement letter authorized such payments to satisfy Eisemann's fees and Allen approved the cover letter stating that Plaintiffs had no objection. (Ex. G ¶ 6; Ex. I at 2.) Plaintiffs' opposition even concedes that Phyllis "never had an objection to paying Eisemann his fees." (Pl. Opp. ¶ 49.)

Second, Plaintiffs offer no evidence of the "corrupt agreement" they allege. Eisemann has sworn that he made no agreement with the SEC or the Court beyond the Stipulation's written terms, (Eisemann Decl. ¶¶ 2-3), and it is entirely unremarkable for a creditor and an attorney to agree to a release of funds in which the attorney holds a superior charging lien. Paragraph 13 of the Stipulation simply confirmed that Eisemann would apply the released funds to his fees rather than pass them through to the judgment debtor and his wife—an entirely normal (and expected) condition for a judgment creditor to attach to its consent to releasing restrained funds. Finally, Plaintiffs identify no evidence that the agreement with the SEC shaped Eisemann's advocacy, which had no effect on Plaintiffs' failure to recover the Proceeds for the reasons that the Court has articulated.

## CONCLUSION

The Court has considered Plaintiffs' remaining arguments and finds them to be without merit. For the foregoing reasons, Eisemann's motion for summary judgment is GRANTED as to the claims asserted by Allen and by Phyllis in her individual capacity, which are DISMISSED WITH PREJUDICE. The claims asserted by Phyllis as guardian of Jesse are DISMISSED WITHOUT PREJUDICE.[4]

Within seven days of this Order, Eisemann shall advise the Court by letter whether he intends to pursue his counterclaims or consents to dismissal of this Action.

The Clerk of the Court shall close all open docket numbers and mail a copy of this Opinion and Order to Plaintiffs.

**SO ORDERED.**

Dated: New York, New York
November 13, 2026

LORETTA A. PRESKA
Senior United States District Judge

[4] The Court is mindful that a non-attorney guardian may not litigate pro se on behalf of an incompetent adult, meaning that a court presented with such claims may not reach those claims on the merits. Berrios v. N.Y.C. Hous. Auth., 564 F.3d 130, 134-35 (2d Cir. 2009). Accordingly, any claims asserted on Jesse H. Gottlieb's behalf will be dismissed without prejudice.